651 So.2d 308 (1995)
AUTOCOUNT, INC., Plaintiff-Appellee,
v.
AUTOMATED PRESCRIPTION SYSTEMS, INC., Defendant-Appellant.
No. 94-1020.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
Rehearing Denied April 7, 1995.
*309 Christine Lipsey, James Rodney Chastain, Jr., Baton Rouge, for Autocount, Inc.
Charles Stovall Weems, III, Julie Rene Wilkerson, Alexandria, for Automated Prescription Systems, Inc.
Michael Simon Tudor, Alexandria, for Gary Steepleton.
Before DOUCET, C.J., and THIBODEAUX and SULLIVAN, JJ.
THIBODEAUX, Judge.
This case involves a dispute over whether fiduciary duties were breached by plaintiff-appellee/defendant-in-reconvention, Auto-Count, Inc., when its president, Gary Steepleton, allegedly used information he acquired as a former officer of defendant-appellant, Automated Prescription Systems, Inc. (APS) for seizing a business opportunity from APS. APS accuses Steepleton and AutoCount of manufacturing and marketing an automated pill counter for themselves after acquiring a knowledge of that instrument during Steepleton's employment with APS. In its view, these actions breached a fiduciary duty owed to APS and violated the Uniform Trade Secrets Act.
AutoCount, Inc. filed a motion for summary judgment which was granted by the trial court. The trial judge found that Steepleton, AutoCount's president and APS's former vice-president of marketing, in developing a pill counter, "did not breach a fiduciary duty nor did he usurp a corporate opportunity of APS."
For the following reasons, we affirm the judgment of the trial court.

I.

ISSUES
APS appeals and asserts the following assignments of error:
1. Whether the trial court erred in granting AutoCount, Inc.'s motion for summary judgment on Automated Prescription Systems Inc.'s cause of action for breach of fiduciary duty by usurpation of a corporate opportunity.
2. Whether the trial court erred in granting AutoCount, Inc.'s motion for summary judgment on Automated Prescription Systems Inc.'s cause of action for violation of the Uniform Trade Secrets Act.

*310 II.

FACTS

A. Factual History
Prior to the formation of AutoCount on May 22, 1992, and prior to his becoming the president of AutoCount, Steepleton was employed by APS. Steepleton ultimately became vice-president of marketing and sales for APS. APS is in the business of marketing, engineering, and selling or leasing of automated drug counting equipment to the pharmacy industry. AutoCount's business is similar in that it involves pharmaceutical supplies specializing in pharmacy automation.
For several years, APS collected information about a product known as a universal counter. A universal counter is an instrument which counts pills and dispenses that quantity into a vial while returning the balance to the original bottle. There are two types of countersone that counts as the pills drop and another which computes a predetermined number of pills. In 1987, APS decided to pursue a universal counter to add to its product line. Prior to 1987, APS was involved in leasing to its customers a line of products called the Baker Cells and the Baker Cassette System. The Baker systems utilize a singular counting mechanism in a series of cassettes with each cassette containing a specific drug. After researching and testing several universal counters, APS decided that it would be more feasible and economical to develop and manufacture a universal counter in-house.
In mid 1991, APS obtained a pre-determining universal counter known as the Med-A-Counter which had been on the market since 1977 and observed its functioning. The president and chief executive officer of APS, James R. Baker, Jr., who observed the Med-A-Counter, decided that APS could enter the market quicker and cheaper by pursuing the rights to the Med-A-Counter as opposed to developing a universal counter in-house. Baker contends that he instructed Steepleton to pursue acquiring the rights to the Med-A-Counter for APS. Steepleton maintains that he was asked only to conduct a market assessment regarding universal pill counting machines. Steepleton was enthusiastic about the product but, according to Steepleton, Baker was not.
Steepleton had no written employment agreement with APS nor did he have an noncompetition agreement with APS. In 1991, Steepleton began considering the idea of going out on his own and developing a universal pill counter. Steepleton developed a business plan that became AutoCount. In his deposition, Steepleton stated that, by working with equipment that belonged to him out of his home at night and on weekends, he developed his ideas for a pre-determining universal pill counter.
Prior to leaving APS, Steepleton investigated the ownership of the Med-A-Counter patent and learned that the patent was owned by Pak-Tech Industries. Steepleton further stated in his deposition, that the purpose of his investigation was not to acquire rights to the Med-A-Counter, but to determine ownership and patent points. Neither Steepleton nor APS ever acquired the rights to the Med-A-Counter.
Baker contends that Steepleton, instead of pursuing the rights to the Med-A-Counter for APS, began pursuing the rights for himself and the company that he intended to form, which ultimately became AutoCount. APS further claims that Steepleton and Bob Wells, a former regional sales manager for APS who is now Steepleton's partner, obtained a Med-A-Counter and sent it to Korea. In Korea, the Med-A-Counter was reverse-engineered. APS claims also that Steepleton and Wells's idea was to manufacture the Med-A-Counter overseas for distribution in the United States and England.
APS considered information included in Steepleton's business plan, which was sent to potential investors who would fund the development of Steepleton's pre-determining universal pill counter, to be confidential and proprietary. Steepleton tendered his resignation from APS on April 1, 1992, and he left the company one month later on May 1, 1992. Steepleton took APS's profit and loss statement that was shown to an investor, Tom Adamek, who ultimately became a shareholder in AutoCount.
*311 Steepleton claims that AutoCount's product, which was introduced in August of 1992, with the trade name "Redicount," is the product of his own extensive design and engineering work. Further he claims that "Redicount" is distinct from and superior to the Med-A-Counter. Most notable, the "Redicount" can count any type of medication without any adjustmentsa feature not present in other products of this type on the market. APS, on the other hand, claims that the "Redicount" mirrors the Med-A-Counter.

B. Procedural History
Originally, AutoCount filed a petition for declaratory judgment which sought a declaration from the trial court that it had the right to market and sell a product known as the "Redicount" universal pill counter and a declaration that the "Redicount" universal pill does not utilize any proprietary technology of APS. APS filed an answer to Auto-Count's petition contending that AutoCount did not have the right to market the "Redicount." Not until September 9, 1993, did APS file a reconventional demand against AutoCount and Steepleton asserting that Steepleton, in developing and marketing a universal pill counter which he calls "Redicount" but which APS asserts is really the Med-A-Counter, breached a fiduciary duty that Steepleton owed to APS as an officer of APS based on usurpation of a corporate opportunity that belonged to APS and violating the Uniform Trade Secrets Act. In other words, Steepleton seized a business opportunity that rightfully belonged to his former employer, APS, and, in so doing, breached a fiduciary duty to APS. Additionally, as part of the relief requested in its reconventional demand, APS sought a preliminary injunction to prohibit Steepleton's actions with regard to the "Redicount."
Meanwhile, on October 21, 1993, Auto-Count filed a motion for summary judgment on the main demand and the reconventional demand. Attached to its motion were the following exhibits: excerpts from Steepleton's deposition, excerpts from Baker's deposition, Steepleton's affidavit, and APS's answer to AutoCount's interrogatory no. 3. The affidavit of Geoffrey Mantooth was offered at the hearing along with the entire record on the preliminary injunction.
The trial judge granted AutoCount's motion for summary judgment and denied APS's motion for preliminary injunction.
The final judgment granted the declaratory relief prayed for by AutoCount in its main demand, which included a declaration that AutoCount has all proprietary rights in the "Redicount;" that the "Redicount" technology does not involve intellectual property rights or trade secrets owned by APS; and, that AutoCount is free from interference and disturbance by APS. The judgment also dismissed APS's reconventional demand against AutoCount.

III.

LAW AND DISCUSSION

A. Summary Judgment
Preliminarily, it should be noted that appellate courts review summary judgments de novo under the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). As set forth in La.Code Civ.P. art. 966(A), a plaintiff or a defendant in the principal or any incidental action, with or without supporting affidavits, may move for summary judgment in his favor for all or part of the relief for which has been prayed. Further, the mover is entitled to judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with supporting affidavits, if any, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B); Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3d Cir.1992).

B. Breach of Fiduciary Duty by Usurpation of a Corporate Opportunity
APS claims that there are several disputed material facts with regard to Steepleton's fiduciary duty to APS. APS claims *312 that there is a disputed fact as to Steepleton's position as an officer at APS. This is incorrect. Steepleton admits that he was an officer of APS and he agrees that, as an officer, he owed APS a fiduciary duty. The second alleged disputed issue of fact asserted by APS is whether the Med-A-Counter was a corporate opportunity belonging to APS. APS asserts that the question of whether a "business" opportunity is a "corporate" opportunity is a question of fact to be determined from the circumstances existing at the time when the "opportunity" arose.
The record establishes that APS was interested in developing and manufacturing a universal counter. The record also establishes that in mid 1991, APS observed the functioning of the Med-A-Counter and determined that the market could be entered more quickly and less expensively by pursuing the rights to the Med-A-Counter. Steepleton conducted a market assessment regarding universal pill counting machines. However, APS maintains that Baker instructed Steepleton to obtain the rights to the Med-A-Counter. The record further establishes that Steepleton began formulating the idea of starting his own pharmaceutical supply company and in his spare time developed "Redicount" and did not pursue the rights to Med-A-Counter. Thus, the record clearly shows that Steepleton was an officer of APS and that APS was interested in adding a universal pill counter to its product line, specifically, the Med-A-Counter. The record also clearly shows that while Steepleton was employed with APS, he formulated the idea of starting his own business and marketing a universal pill counter.
Although the record clearly shows that APS was interested in the Med-A-Counter which was a universal pill counter and that Steepleton developed a universal pill counter called "Redicount," we find that the two products are not one and the same. Apparently, APS considers the products the same because they perform the same function and because Steepleton developed his product while APS was pursuing rights to the Med-A-Counter, a universal pill counter, for its own product line. We do not agree. Steepleton's deposition reveals that the "Redicount" is distinct from the Med-A-Counter in that it can count any type of medication without undergoing any adjustments. Therefore, we find, as did the trial judge, that Steepleton did not breach his fiduciary duty by usurpation of a corporate opportunity. The opportunity to obtain the rights to the Med-A-Counter still exists as neither APS nor AutoCount have procured those rights.

C. Violations of the Uniform Trade Secrets Act
APS asserts that information is a trade secret. Therefore, when Steepleton used APS's profit and loss statement in the business plan he submitted to potential investors in his company, he violated a trade secret. APS claims that there exists a material factual dispute as to what a trade secret is. AutoCount urges that the definition of trade secret does not include information.
Louisiana Revised Statute Title 51:1431(4) provides for the definition of "Trade Secret" as follows:
"Trade Secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and
(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
The information for which "trade secret" status is sought is not that which is contemplated as being a trade secret under the statute. It does not include all information about a company but only that information as delineated in the words illustrating the type of information and as further defined in subparagraphs (a) and (b) of La.R.S. 51:1431(4). The trial court's dismissal of the trade secrets claim was correct.

CONCLUSION
For the foregoing reasons, the judgment of the trial court granting AutoCount, Inc.'s *313 motion for summary judgment and dismissing, with prejudice, the reconventional demand by Automated Prescription Systems, Inc. against AutoCount, Inc. is affirmed. Costs of this appeal are assessed against Automated Prescription Systems, Inc.
AFFIRMED.